**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

ROY G. LOOZA,

Plaintiff,

vs.

JO ANNE B. BARNHART,

Defendant.

CASE NO. 06CV1203-LAB (JMA)

**ORDER ADOPTING REPORT AND RECOMMENDATION**

On June 7, 2006, Plaintiff filed his complaint, asking the Court to review a final administrative decision of the Commissioner of Social Security denying him Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Pursuant to 28 U.S.C. § 636, this matter was referred to Magistrate Judge Jan Adler for a report and recommendation. The parties filed cross motions for summary judgment.

On June 14, 2007, Judge Adler issued his report and recommendation (the "R&R"), recommending that Plaintiff's motion for summary judgment be denied and Defendant's cross-motion for summary judgment be granted. On July 11, Plaintiff filed objections to the R&R.

On August 3, 2007, Jaime Preciado filed a notice of appearance for Defendant, noting that Michael J. Astrue had become Commissioner of Social Security and requesting that, pursuant to Fed. R. Civ. P. 25(d)(1), Astrue be substituted as Defendant in this action.

/ / /

/ / /

**I. Factual and Procedural History**

**A. Medical History**

The following history is taken from those portions of the R&R to which Plaintiff did not object and which the Court, as noted below, adopts.

Plaintiff applied on June 3, 2003 for social security benefits, alleging a disability onset date of December 1, 1999. His claim was denied initially and again on reconsideration on March 5, 2004. On November 3, 2005, an administrative hearing was held before Administrative Law Judge Edward Steinman (the "ALJ"). The ALJ determined that Plaintiff was not disabled. Further review was denied by the Appeals Council for the Social Security Administration.

Plaintiff was born in 1946 and was 59 years old at the time of the administrative hearing. He has a sixth grade education and is married. He last worked between 1998 and 2000. He alleges disability due to dizziness, anxiety, depression, stress, diabetes, and high blood pressure.

Plaintiff's treating physician from November, 2000 to August, 2005 was Dr. Catherine Snively. She diagnosed him with diabetes mellitus in 2000 and saw him for regular checkups because of his diabetes, hypertension, and high cholesterol. His complaints of dizziness date back to December, 2000. Dr. Snively also diagnosed Plaintiff with depression and anxiety.

On several occasions in 2003 and 2005, Plaintiff was seen in or admitted to the hospital for various complaints, some of which included coronary problems, hypertension, high cholesterol, diabetes mellitus, and numbness.

From August, 2004 to May, 2005, Plaintiff was treated by Dr. David Stieber. On August 19, 2005, he underwent a psychiatric examination by Dr. Mounir Soliman. Plaintiff reported having received psychiatric treatment as an outpatient and as an inpatient, and having made a suicide attempt at an unspecified time. Plaintiff said he was taking Lexapro. Dr. Soliman diagnosed Plaintiff with Major Depression with Psychotic Features, and assessed his GAF score at 65, which suggests some mild symptoms or some difficulty in social occupational, or school functioning. Dr. Soliman assessed Plaintiff's work limitations as "none" and "slight."

In August, 2005, Plaintiff underwent an internal medicine evaluation with Dr. Ajit Raisinghani to address his dizziness. Dr. Raisinghani's opinion was that Plaintiff's dizziness was orthostatic. He

determined that Plaintiff was capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and walking for six hours out of an eight-hour day, bending and crouching occasionally, and sitting for six hours out of an eight-hour day.

On September 15, 2005, Dr. Tahir Bhatti wrote a letter stating that Plaintiff had begun treatment with the Maria Sardiñas Center in February, 2005, outlining Plaintiff's diagnoses, symptoms, and medications. The letter said Plaintiff's ability to perform at a job was limited. Dr. Bhatti's treatment notes of September 26, 2005 indicate that these medications were helping Plaintiff's panic attacks, anxiety, and insomnia. His dizziness was unchanged. Plaintiff reported that his wife's condition was causing him stress, but that he had "almost no depression." Dr. Bhatti's "Mental Residual Functional Capacity" form dated October 20, 2005 indicates Plaintiff had moderate to marked work limitations, could interact with the public only two hours a day, could interact with supervisors and coworkers less than two hours a day, and could work at a consistent pace for less than two hours per day. Dr. Bhatti also observed that Plaintiff was constantly dizzy, was forgetful, and could not focus.

Finally, Dr. Eric Leute saw Plaintiff during Dr. Snively's maternity leave. Dr. Leute saw Plaintiff twice in September and October, 2005. He reviewed Plaintiff's chart and examined Plaintiff, and noted that Plaintiff suffered from unpredictable dizzy spells of unknown origin. In his opinion, Plaintiff could lift and carry 25 pounds occasionally and less than 10 pounds frequently, and could stand and walk for less than two hours in an eight-hour day. Dr. Leute believed Plaintiff's ability to sit was unimpaired, but said Plaintiff should not climb, kneel, crouch, crawl, or stoop because of his dizziness and panic attacks. Dr. Leute believed Plaintiff was incapable of performing even sedentary work on a regular basis, and said that Plaintiff could not safely work around machinery.

**B. Administrative Hearing and Decision**

Plaintiff testified at his hearing. He said he believed his dizziness and panic attacks made him unable to work. He said he experienced approximately five panic attacks per work, lasting from a few minutes to approximately an hour. He said Dr. Bhatti's treatment had decreased the attacks' intensity and frequency.

/ / /

Medical expert witness Dr. Gerald Weingarten testified that Plaintiff's physical impairments included Type II diabetes, mild hypertension, recurring chest pain and dizziness, and pain in both knees. He testified Plaintiff did not meet any of the impairments set forth in the list of impairments. Dr. Weingarten agreed with Dr. Raisinghani's assessment of Plaintiff's residual functional capacity, but added that Plaintiff should not be exposed to hazards because of his dizziness.

Vocational expert witness Gloria Lasoff testified at the hearing. She testified that under the limitations set forth by Drs. Raisinghani and Soliman could return to his prior work, but that he could not perform any work if he suffered from all the limitations set forth by Dr. Leute or, probably, those set forth by Dr. Bhatti. Under the limitations set forth by the ALJ, she testified that Plaintiff could perform 75% of the 900 "medium" job titles.

The ALJ then made certain findings and issued his decision, finding that Plaintiff could perform significant range of medium work, including a significant number of jobs in the national economy, and that Plaintiff was not under a disability as defined in the Social Security Act at any time through the date of decision.

## II. Discussion

### A. Plaintiff's Objections to R&R

The R&R recommended upholding the ALJ's decision. In response, Plaintiff filed two primary objections: He objects that the ALJ failed to offer specific and legitimate reasons for rejecting Dr. Bhatti's September, 2005 and October, 2005 opinions, and that the ALJ's determination of Plaintiff's mental residual functional capacity ("RFC") was not based on substantial evidence.

### B. Legal Standards

A district judge "may accept, reject, or modify the recommended decision" on a dispositive matter prepared by a magistrate judge proceeding without the consent of the parties for all purposes. Fed. R. Civ. P. 72(b); *see* 28 U.S.C. §636(b)(1). "The court shall make a de novo determination of those portions of the [report and recommendation] to which objection is made." 28 U.S.C. §636(b)(1). This section does not require some lesser review by the district court when no objections are filed. *Thomas v. Arn*, 474 U.S. 140, 149–50 (1985). The Ninth Circuit has interpreted the language of 28 U.S.C. Section 636(b)(1), and determined that the "statute makes it clear that the

district judge must review the magistrate judge's findings and recommendations *de novo if objection is made, but not otherwise*." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Thus, the Court reviews those portions of the R&R to which specific objections have been made. To the extent Plaintiff objected to the R&R, and to the extent the R&R appears to have relied on reasoning not set forth in the ALJ's opinion, the Court does not rely on the R&R, but has conducted a de novo review.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (citation omitted). The ALJ may not reject the opinion of a treating doctor without providing "specific and legitimate" reasons supported by substantial evidence in the record for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Ninth Circuit distinguishes among the opinions of treating physicians, examining physicians, and nonexamining physicians. *Id.* "Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Id.* (citation omitted). The contrary opinion of an examining physician may serve as a specific and legitimate reason for rejecting the opinion of a treating physician. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). "The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830 (citations omitted). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician." *Id.* at 831 (citations omitted).

The ALJ need not discuss every piece of evidence before him, but must explain why "significant probative evidence has been rejected." *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984). On review, the Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions. *See Mayes v. Massanari*, 276 F.3d 453, 359 (9th Cir. 2001). The ALJ's finding of fact must be supported by substantial evidence. *See Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* (citation omitted). Substantial evidence means "more than a

scintilla" but may be less than a preponderance. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997). Even if the ALJ's conclusions are supported by substantial evidence, however, they may be set aside if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his decision. *See Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978).

If the evidence can reasonably support either affirming or reversing the Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Flaten*, 44 F.3d at 1457 (citation omitted). The Court must judge the propriety of the ALJ's actions by the grounds invoked by him. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 169 (1962).

**C. Objection: ALJ's Rejection of Dr. Bhatti's Opinion**

Plaintiff objects that the ALJ summarized Dr. Bhatti's September 15, 2005 opinion, then rejected Dr. Bhatti's October, 2005 opinion without explaining whether, or why the September 15 opinion was also rejected. (Obj. at 2:20–3:1, 3:20–4:2, 4:17–24.)

The ALJ specifically mentioned he discounted the October, 2005 opinion because it was in conflict with the Dr. Bhatti's progress notes. (Admin. R. at 15 (ALJ's Decision at 4).) He cited four specific aspects of the progress notes: Plaintiff's condition was stable with current medications, his mood was described using the phrase "almost no depression," his medications were helping to reduce his symptoms, and Plaintiff was doing reasonably well. (Admin. R. at 14–15 (citing Admin. R. at 376–81).) Dr. Bhatti's letter of September 15, 2005, cited by the ALJ (Admin. R. at 14) recites a diagnosis of "Major Depressive Disorder, Severe, Recurrent, Without Psychotic Features," and of "Panic Disorder with Agoraphobia," and notes that this "limits his ability to perform a job." (Admin R. at 331.) The same letter notes Plaintiff's panic attacks, dizziness, depressed mood, low energy level, insomnia, and anxiety. (*Id.*) An ALJ may reject a treating physician's opinion when it conflicts with the physician's treatment notes, provided the conflict constitutes substantial evidence. *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001). However, the Ninth Circuit has explained that under these circumstances, the treatment notes must be read "in full and in context." *Id.*

Having read Dr. Bhatti's progress notes and letter in full and in context, the Court believes the evidence therein tending to cast doubt on Dr. Bhatti's October 20, 2005 "Mental Residual Functional Capacity" form is somewhat weaker than the ALJ stated. The progress notes are rather limited in

scope and, in spite of improvement, note continuing dizziness and some depressed mood. (Admin. R. at 376.) The fact that medication improved Plaintiff's panic attacks does not mean Plaintiff's disorders no longer prevented him from working. *Holohan*, 246 F.3d at 1205 ("That a person who suffers from severe panic attacks, anxiety, and depression makes some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.")

The Court also notes the September 26 progress notes' reference to "almost no depression" describes Plaintiff's mood, and is in quotation marks, as if Plaintiff himself is being quoted. This is substantial evidence that Plaintiff was in a better mood, but does not clearly mean he no longer suffered from a depressive order.

Having noted these weaknesses, the ALJ's reading of the progress notes for September 26 is not unfair. The notes for this visit, overall, do reasonably support the ALJ's conclusion that Plaintiff was doing well and his condition was under control. The notes describe Plaintiff as no longer suffering from symptoms and his medications as requiring no adjustment. (Admin. R. at 376.) The Court holds these notes constituted substantial evidence. These notes paint quite a different picture of Plaintiff than does the "Mental Residual Functional Capacity" form. (*Id.* at 335–36.)

Because the ALJ specifically pointed this conflict between Dr. Bhatti's September 26 progress notes and his October 26 "Mental Residual Functional Capacity"form and relied on the conflict in concluding the "Mental Residual Functional Capacity" form was controverted, the Court holds the ALJ set forth "specific and legitimate" reasons supported by substantial evidence in the record for rejecting the "Mental Residual Functional Capacity" form. *Lester*, 81 F.3d at 830.

Plaintiff also argues the ALJ gave no reason for having "completely ignored Dr. Bhatti's opinions contained in his September 2005 letter." (Obj. at 2:24–26 (citing Admin. R. at 15).) For several reasons, this argument is misguided. Dr. Bhatti's progress notes seem to reference this letter, stating "Patient asked for letter of diagnosis and medication for lawyer." (Admin. R. at 378.) The letter itself is brief and is addressed "To Whom It May Concern."[1] (*Id.*) While the ALJ specifically

---

[1] The body of the letter reads as follows:

> This letter is to verify that Roy Looza started treatment at Maria Sardinas Center on 2/14/05 and is having medical treatment with Tahir Bhatti, M.D.

acknowledged the existence of letter (referring to it as a "note"), (*Id.* at 14), there is no suggestion he recognized it, brief as it was, as anything more than a preliminary or summary communication. Nor does Plaintiff show the letter had evidentiary value separate from the progress notes and assessments on which it was based. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir.2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") In addition, the body of the letter mentions a diagnosis, symptoms, and medications the ALJ knew about. Most significantly, however, the ALJ acknowledged what the letter says, *i.e.*, that in Dr. Bhatti's opinion Plaintiff suffers from various disorders and that his condition "limits his ability to perform a job." (Admin. R. at 14 (ALJ's Opinion), 331 (letter).) The ALJ agreed with this assessment, finding Plaintiff did suffer from some impairments and was limited in the types of work he could perform. (Admin R. at 18–19 (ALJ's Opinion, ¶¶ 3, 6, 10, 11).) This letter does not, as Plaintiff argues, state that Plaintiff's symptoms are disabling or that he cannot work at all. (Obj. at 4:11–23.)[2]

Therefore, to the extent raised in Plaintiff's objections, the Court holds the ALJ adequately explained why he rejected the October 20 "Mental Residual Functional Capacity" form. The ALJ did not explicitly reject Dr. Bhatti's September 15, 2005 letter, but this letter is not inconsistent with the ALJ's findings. Because the evidence can reasonably support either affirming or reversing the

/ / /

---

> His diagnosis is 296.33 Major Depressive Disorder, Severe, Recurrent, Without Psychotic Features and 300.01 Panic Disorder with Agoraphobia, this limits his ability to perform a job, he has panic attacks, dizziness, depressed mood, low energy level, insomnia, anxiety. [sic]
>
> Clt. was prescribed Lexapro and Trazodone, he seems to be consistent with medical treatment. [sic]
>
> If you have any further questions, please don't hesitate to call.

[2] In an apparent conflict, Plaintiff agrees that Dr. Bhatti "did NOT opine that Plaintiff was unable to work but rather that Plaintiff sustained significant mental limitations." (Obj. at 7:3–6 (citing R&R at 18, Admin. R at 335–36 ("Mental Residual Functional Capacity" form)).) The R&R characterizes Dr. Bhatti's opinion as stating that Plaintiff was unable to work; however, as Plaintiff recognizes, this apparently referred to the "Mental Residual Functional Capacity" form. The R&R, however, was apparently inferring from the form that if Plaintiff were limited to the extent set forth in the form, he would effectively be prevented from working. (*See, e.g.*, *id.* at 336 ("[I]t would be hard for him to be in any situation for 8 hrs/day[.]"))

Commissioner's conclusion, the court may not substitute its judgment for that of the Commissioner. *Flaten*, 44 F.3d at 1457 (citation omitted).

**D. Objection: The ALJ's Determination of Plaintiff's Mental RFC**

Plaintiff objects that the ALJ failed to base his determination of Plaintiff's mental RFC on substantial evidence. (Obj. at 7:1–2.) The RFC is used at Step 4 and, if necessary, Step 5 of the sequential process to decide whether a claimant is disabled. SSR 96-8p, 1996 WL 374184 at *2; 20 C.F.R. § 404.1545(a)(5).

Concerning Plaintiff's mental limitations, the ALJ's opinion concluded that "The claimant has no reduction in cognition to handle tasks, and is limited to non-public settings, with limited contact with peers and supervisors." (Admin R. at 16.) The RFC thus departed from Dr. Soliman's findings that Plaintiff "is able to interact with co-workers, supervisors, and the general public." (*Id*. at 316.) Plaintiff argues the RFC references Dr. Bhatti's October, 2005 opinion, which states that the Plaintiff would be limited in his ability to interact with the public, supervisors, and coworkers. (Obj. at 7:6-9; Admin R. at 335.) Plaintiff argues that if Bhatti's October report is the source of the RFC, then the ALJ needed to cite the evidence, or provide an explanation of where the "limited contact" requirement is grounded. (Obj. at 8:8-10.) He also contends that the "ALJ and Magistrate are estopped from plucking out certain limitations from a document that the ALJ has rejected and discredited." (Obj. at 8:23-25.)

Plaintiff's arguments in favor of this objection are fairly cursory, and cite little authority in their support. Before determining Plaintiff's RFC, the ALJ stated what weight he assigned to the various physicians' assessments. With regard to mental limitations, the ALJ cited the assessments of Drs. Soliman and Bhatti, stating that he gave moderate weight to Dr. Soliman's assessment, and discounted Dr. Bhatti's October, 2005 assessment. (Admin. R. at 16.) Plaintiff now, apparently, seeks an explanation of how the ALJ came to draw more heavily on Dr. Bhatti's assessment of Plaintiff's mental RFC. (Obj. at 7:13–16 ("The ALJ failed to explain why these limitations found by Dr. Bhatti

/ / /

/ / /

/ / /

were found to be legitimate and consistent with substantial evidence but the balance of Dr. Bhatti's limitations were rejected."))[3]

The R&R points out that, even though he rejected Dr. Bhatti's opinion that Plaintiff was unable to work, the ALJ was entitled to consider the contents of Dr. Bhatti's records in determining Plaintiff's RFC. (R&R at 18:17–28.) Plaintiff characterizes this analysis as "post hoc arguments" and contends it may not be considered, and Plaintiff is correct in noting the ALJ's decision did not specifically explain why Dr. Bhatti's opinion was relied on when determining Plaintiff's RFC.

As Plaintiff argued previously, more weight should generally be given to the opinion of a treating physician than the opinions of other physicians, and an ALJ must provide specific and legitimate reasons for rejecting it. *Lester*, 81 F.3d at 830. Plaintiff has not, however, cited authority for the principle that an ALJ must either accept or reject a physician's assessment as a whole, or that where an ALJ has discounted a treating physician's assessment, he must provide reasons for not rejecting the assessment in its entirety. Nor does it appear the ALJ is prevented from rejecting a physician's opinion in part. *See Jeffers v. Astrue*, 2007 WL 1417283, slip op. at *1 (9th Cir., May 9, 2007) (holding that an ALJ properly rejected the testimony of a claimant, her mother, and two physicians "to the extent they concluded [the claimant] was completely disabled").

While Plaintiff is correct that it is incumbent on the ALJ rather than counsel or the Court to explain the bases for his decision, *Burlington Truck Lines,* 371 U.S. at 169, Plaintiff's objection is deficient in at least two respects. As noted, it does not appear the ALJ was required to explain why he relied on the treating physician's opinion regarding Plaintiff's mental limitations instead of accepting an examining physician's opinion. Second, because the RFC favors Plaintiff, it is difficult to discern what Plaintiff hopes to gain by his argument. The ALJ's determination of the RFC, relying more heavily on Dr. Bhatti's assessment was, if anything, helpful to Plaintiff's case. Even if it appeared the ALJ had erred by inadequately explaining his reasons for making the RFC determination as he did, or even if his opinion was clearly in error in not relying on Dr. Soliman's opinion, requiring the ALJ to reexamine this issue would not affect Plaintiff's substantive rights and therefore would not

---

[3] This represents a shift from Plaintiff's motion for summary judgment, where he argued the "limited contact" limitations "are not consistent with or supported by any medical opinion in the record." (Pl.'s Memo in Supp. of Mot. for Summ. J. at 12:19–21.)

require reversal. *See Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) ("We have . . . affirmed under the rubric of harmless error where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion.")

## III. Conclusion and Order

Michael J. Astrue is hereby **SUBSTITUTED** as Defendant in this action.

For the reasons stated above, Plaintiff's objections to the R&R are **OVERRULED** and the R&R is **ADOPTED**. Plaintiff's motion for summary judgment is **DENIED**, and Defendant's cross-motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED**.

DATED: September 5, 2007

HONORABLE LARRY ALAN BURNS
United States District Judge